IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE LOUISIANA FORESTRY ASSOCIATION, INC., et al., | : | CIVIL ACTION |
|     Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| HILDA SOLIS, et al., | : | |
|     Defendants, | : | |
| and | : | |
| | : | |
| COMITÉ DE APOYO A LOS TRABAJADORES AGRÍCOLAS, et al., | : | NO. 11-7687 |
|     Defendant-Intervenors | : | |

MEMORANDUM

Legrome D. Davis, J.                                                                                                    June 25, 2012

      Defendant Intervenors have filed a motion to amend their answer to add Mark Cunanan as a defendant intervenor and delete Jesús Vite Lopez, and to add a crossclaim against the Department of Labor ("DOL") and the Department of Homeland Security ("DHS") (collectively, the "Federal Defendants"). (Doc. No. 105, previously filed at Doc. No. 48.)  For the reasons that follow, the motion to amend will be granted in part and denied in part.

I. Factual Background and Procedural History

     A. The Parties

      The plaintiffs in the present suit are groups representing the interests of various national and Louisiana-state industries—including logging and reforestation, hotels, and commercial crawfish and shrimping—in which foreign workers are employed under the H-2B visa program. The H-2B visa program—so named in reference to the statutory section under which it was

created, 8 U.S.C. § 1101(a)(15)(H)(ii)(B)—is administered by the DHS in conjunction with the DOL. The program allows U.S. employers to bring foreign workers ("H-2B workers") to the United States to perform temporary non-agricultural work, provided that ". . . unemployed persons capable of performing . . . service or labor cannot be found in this country." 8 U.S.C. § 1101(a)(15)(H)(ii)(B). In accordance with this statutory mandate, the DHS requires employers seeking to sponsor foreign workers for H-2B visas to obtain certifications from the DOL "stating that qualified workers in the United States are not available and that the alien's employment will not adversely affect wages and working conditions of similarly employed United States workers." 8 C.F.R. § 214.2(h)(6)(iv)(A). Such certifications are referred to as "labor certifications."

    Plaintiffs have raised a challenge under the Administrative Procedure Act ("APA") and the Regulatory Flexibility Act ("RFA") to the validity of a regulation promulgated by the DOL on January 19, 2011, and currently set to go into effect on October 1, 2012, relating to the DOL's process of issuing labor certifications. See 76 Fed. Reg. 3452 (Jan. 19, 2011) ("the 2011 wage rule"). The 2011 wage rule pertains to the DOL's method of determining the minimum wages that employers seeking to hire H-2B workers must pay to U.S. and foreign workers.

    Defendant-Intervenors (the "CATA plaintiffs") are the plaintiffs in a separate case pending before this court, Comité de Apoyo a los Trabajadores Agrícolas v. Solis, No. 09-240. The CATA plaintiffs are individuals participating in or affected by the H-2B visa program and organizations representing the interests of similarly situated individuals. They seek to amend their September 22, 2011 answer to the complaint in the present suit to add a challenge to a rule promulgated by the DOL on December 30, 2011. As elaborated below, the December 30, 2011

rule provides for the DOL's continued use of an invalidated 2008 wage rule until the 2011 wage rule, which is the subject of Plaintiffs' challenge, goes into effect. (Doc. 105-1, at 10.)

      B. The Skill-Level Methodology of Prevailing Wage Determination

On December 19, 2008, the DOL promulgated a regulation specifying that, in the H-2B visa program, "the prevailing wage for labor certification purposes shall be the arithmetic mean . . . of the wages of workers similarly employed at the skill level in the area of intended employment," using data from the Occupational Employment Statistics ("OES") program. 73 Fed. Reg. 78020, 78056 (as codified at 20 C.F.R. § 655.10(b)(2)) (the "2008 wage rule"). In issuing prevailing wage determinations under the 2008 wage rule, the DOL relies on a 2005 guidance letter that set out four levels of wages for each occupation based on the "skill level" of the H-2B employees. CATA v. Solis, No. 09-240, 2010 WL 3431761, at *18 (E.D. Pa. Aug. 30, 2010) ("CATA I"); 73 Fed. Reg. at 78030. The term "skill-level methodology" refers to the methodology for determining prevailing wages for H-2B purposes under the 2008 wage regulation and the 2005 guidance letter.

      C. CATA v. Solis

The plaintiffs in CATA v. Solis (Defendant-Intervenors in the present suit) raised a challenge under the APA to various aspects of the regulations governing the H-2B program, among them the skill-level methodology.[1] In an opinion dated August 30, 2010, the court (Pollak, J.) held that the skill-level methodology was invalid because the "DOL has never explained its reasoning for using skill levels as part of H-2B prevailing wage determinations" and

---

[1] CATA v. Solis was originally assigned to Judge Louis H. Pollak and the present case was also assigned to Judge Pollak after it was transferred to the Eastern District of Pennsylvania. The two cases were reassigned to me on May 16, 2012, after Judge Pollak's death.

because the four-level system set out in the 2005 guidance letter was never subject to notice and comment. See CATA I, 2010 WL 3431761, at *25.  The court noted that the DOL's errors in promulgating the 2008 regulation were "serious" and that "DOL's failure to provide an explanation for using skill levels in the H-2B program constitutes a recurring issue stretching over more than a decade." Id.

Turning to the question of remedy, the court observed that "[t]he magnitude of DOL's errors . . . counsels in favor of vacating the regulations." Id.  However, in order to avoid creating a regulatory gap, the court declined to vacate the skill-level methodology, instead ordering the DOL to promulgate valid replacement regulations within 120 days. Id.  On DOL's motion, the deadline for publishing new regulations was extended to January 18, 2011.  CATA v. Solis, No. O9-240, 2010 WL 4823236, at *1 (E.D. Pa. Nov. 24, 2010) ("CATA II").

After the court issued its August 30, 2010 opinion and order, the CATA plaintiffs filed a motion asking the court, again, to vacate the skill-level methodology and to order the DOL to condition the issuance of new labor certifications to H-2B employers on the employers' agreement to pay a prevailing wage set by the new methodology once that methodology went into effect.  The court denied the plaintiffs' request for vacatur in an order filed on October 27, 2010. Id.  In an opinion dated November 24, 2010, the court denied plaintiffs' request that it order conditional certifications on the ground that such an order "would blur the line between this court's remedial authority and the DOL's administrative authority." Id., at *3.

D. The 2011 Wage Rule

In January 2011, the DOL announced revised prevailing wage regulations ("the 2011 wage rule"). 76 Fed. Reg. 3452 (Jan. 19, 2011).  In its notice of proposed rulemaking, the DOL

stated that, while the timing of the new wage rule's issuance was determined by the court order in CATA, the DOL had independently concluded that the skill-level methodology did not produce "the appropriate wage necessary to ensure U.S. workers are not adversely affected by the employment of H-2B workers." 75 Fed. Reg. 61578, 61579 (October 5, 2010).

In the preamble to the 2011 wage rule, the DOL found that the skill-level methodology "artificially lowers the wage to a point that it no longer represents a market-based wage for the occupation". 76 Fed. Reg. at 3477. The agency explained,

> [t]he predominance of Level I wages in the program, wages based on the mean of the bottom one-third of all reported wages in the systems, is itself evidence of the adverse impact of those wages on those U.S. workers performing the same tasks and engaged in the same jobs. Specifically, a review of the Department's records for the issuance of prevailing wages in calendar year 2010 indicates that almost 75 percent of jobs are classified at a Level I wage, with the remaining 25 percent scattered in levels II, III, and IV. In a broader examination of wages offered over the past several years, in about 96 percent of cases, the H-2B wage is lower than the mean of the OES wage rates for the same occupation. 75 FR 61580, Oct. 5, 2010. In a low-skilled occupation, the mean for the occupation represents the wage that the average employer is willing to pay for unskilled workers to perform that job. The four-tier structure artificially lowers that wage to a point that it no longer represents a market-based wage for that occupation. The H-2B worker, along with the domestic workers recruited against the application, who are being paid a wage significantly lower than two-thirds of those in that area of employment[,] cannot help but have a depressive effect on the wages of those around him. An employer paying U.S. workers as well as H-2B workers has no incentive to pay a higher compensation. Therefore, it follows that if the employer must only offer and pay Level I wages, wages below what the average similarly employed worker is paid, those wages will make the U.S. workers less likely to accept those job opportunities or will require them to accept the job at a wage rate less than the market has determined is prevailing for the job. The net result is an adverse affect on the worker's income.

76 Fed. Reg. at 3463. The DOL concluded that "continuing the current calculation methodology . . . does not provide adequate protections to U.S. and H-2B workers." Id. at 3477.

The DOL's Federal Register announcement set an effective date of January 1, 2012 for the 2011 wage rule, almost a full year after the publication of the new regulations. Id. at 3452. On June 15, 2011, in response to a motion filed by the plaintiffs, the court vacated the January 1, 2012 effective date of the 2011 wage rule and ordered the DOL to announce a new effective date within 45 days. See CATA v. Solis, No. 09-240, 2011 WL 2414555 (June 16, 2011). On August 1, 2011, the DOL adopted a final rule setting an effective date of September 30, 2011 for the 2011 wage rule and began issuing prevailing wage determinations using the new methodology. CATA v. Solis, No. 09-240, 2011 WL 6150637, at *2 (E.D. Pa. Dec. 9, 2010) ("CATA III").

E. The Present Action

1. Action filed in Louisiana

On September 7, 2011 the present action was filed in the United States District Court for the Western District of Louisiana. See La. Forestry Ass'n, Inc. v. Solis, No. 11-01623 (W.D. La.).[2] The plaintiffs filed a motion requesting a temporary restraining order and a preliminary injunction against the implementation of the 2011 wage rule. (Doc. No. 1.) On September 13, 2011, the Louisiana court denied the motion for a temporary restraining order for lack of showing of immediate or irreparable harm. (Doc. No. 6.)

The CATA plaintiffs filed a motion to intervene as defendants in the Louisiana litigation, and the court granted their motion and filed their defendant-intervenor answer on September 22, 2011. (Docs. No. 37, 38.) After being permitted to intervene, the CATA plaintiffs moved to dismiss the action or to transfer venue to this court, and the Federal Defendants filed a

---

[2] A parallel suit was brought in the United States District Court for the Northern District of Florida. See Bayou Lawn & Landscape Serv. v. Solis, No. 11-00445 (N.D. Fl.).

memorandum in support of that motion. (Docs. No. 14, 65.) Both the CATA plaintiffs and the Federal Defendants filed memoranda opposing any injunctive relief. (Docs. No. 30, 32.) On December 13, 2011, the court granted the CATA plaintiffs' motion to transfer venue to this court. See La. Forestry Ass'n, Inc. v. Solis, No. 11-1623, 814 F. Supp. 2d 655 (W.D. La. 2011). In the same ruling, the court denied, without prejudice, plaintiffs' motion for a preliminary injunction. Id.

### 2. The CATA injunction

In the meantime, the plaintiffs in the CATA action filed a Motion for Further Relief in which they again requested vacatur of the 2008 wage rule, this time in light of the DOL's conclusion, in the preamble to the 2011 wage rule, that the skill-level methodology had a "depressive" affect on the wages of U.S. workers, in violation of the H-2B program's statutory and regulatory mandates. (Doc. No. 127.) On December 9, 2011, the court declined to vacate the 2008 wage rule. CATA III, 2011 WL 6150637, at *5. However, the court ordered DOL "not to utilize the 2008 wage regulation in administering the H-2B program, except to address" an injunction or statute "barring utilization by the DOL of the [2011] Wage Rule in administering the H-2B program." Id.

### 3. First two postponements of the effective date of the 2011 wage rule

On September 22, 2011, the DOL announced that the effective date of the 2011 wage rule would be delayed until November 30, 2011 in order to permit the DOL to continue to administer the H-2B program "in a uniform fashion during the pending litigation." 76 Fed. Reg. 59896, 59897 (Sept. 28, 2011). After the postponement of the effective date to November 30, 2011, the DOL issued to H-2B employers two simultaneous wage determinations governing work to be

performed before and after November 30, 2011, one using the skill-level methodology and the other using the 2011 wage rule. 76 Fed. Reg. 82116, 82177 (Dec. 30, 2011).

The DOL again postponed the effective date of the 2011 wage rule on November 29, 2011, after the passage of the Consolidated and Further Continuing Appropriations Act, 2012, Pub. L. 112-55, Div. B, Title V, § 546 (Nov. 18, 2011). See 76 Fed. Reg. 73508 (Nov. 29, 2011). That Act contained language barring the expenditure of funds to implement, enforce, or administer the 2011 wage rule prior to January 1, 2012. Id. The conference report accompanying the Act stated that the purpose of the postponement was to "allow congress to address" the 2011 wage regulation. H.R. Rep. No. 112-284 (2011) (Conf. Rep.) The conference report directed the DOL to continue to use the skill-level methodology to determine prevailing wages prior to January 1, 2012. Id.

        4. The December 30, 2011 rule

On December 30, 2011, the DOL issued a final rule postponing yet again the effective date of the 2011 wage rule, this time until October 1, 2012. See 76 Fed. Reg. 82116. The DOL's decision to postpone, for a third time, the implementation of the new wage methodology rule was made after the enactment of the Consolidated Appropriations Act of 2012. See id. That Act provided, in relevant part, that "[n]one of the amounts made available under this Act may be used to implement the [2011 wage rule]." P.L.112-74, Title I, Div. F, § 110 (Dec. 23, 2011). The DOL determined that it was necessary to publish the postponement as a final rule, without notice and comment, "[b]ecause of the distinct possibility that we would be unable to operate the H-2B program for the remainder of FY 2012 if the effective date of the wage rule were not postponed." 76 Fed. Reg. 82116.

The postponement of the effective date of the 2011 wage rule left the DOL with the question of how to administer the H-2B program in its absence. Just as it did during the prior two postponements, the DOL decided to continue to use the skill-level methodology. The December 30, 2011 rule provided that until October 1, 2012, "[e]mployers are expected to continue to pay at least the prevailing wage as provided in a prevailing wage determination issued under the 2008 H-2B Rule." Id.

The December 30, 2011 rule thus extended, until October 1, 2012, the life of the wage rule that this court declared invalid on August 30, 2010, see CATA I, 2010 WL 3431761, at *25, and the DOL has concluded "does not provide adequate protections to U.S. and H-2B workers." 76 Fed. Reg. 3462, 3477. As Judge Pollak observed, "[t]he 2008 wage regulation appears to have a remarkable capacity for survival." CATA III, 2011 WL 6150637, at *4.

II. Legal Analysis

After this case was transferred here from the Western District of Louisiana, the CATA plaintiffs filed the motion that will be addressed herein. They request, pursuant to Rule 15(d) of the Federal Rules of Civil Procedure (1) to add Mark Cunanan as a defendant intervenor and delete defendant intervenor Jesús Vite Lopez; and (2) to amend their September 22, 2011 answer to add a crossclaim alleging that:

1. "Crossclaim Defendant DOL's December 30, 2011 decision to continue to grant labor certification to employers using the 2008 wage regulation and the 2005 wage methodology constitutes a final agency action which is arbitrary, capricious and contrary to law in violation of the APA;" and

2. "Crossclaim Defendant DHS's action in continuing to grant H-2B visas to employers based on labor certifications issued by DOL using the 2008 wage regulation and the 2005 wage methodology constitute final agency actions which are arbitrary, capricious and contrary to law in violation of the APA."

(Doc. 105-1 at 10.)  The CATA plaintiffs seek to amend their answer to request, as remedy for these alleged violations, an injunction barring "the use of the 2008 wage rule and requir[ing] DOL to establish a lawful method of making prevailing wage determinations." (Doc. 87, at 10.)

No party has opposed the addition of Mark Cunanan as a Defendant Intervenor, which is permissible under Rule 20(a)(2) of the Federal Rules of Civil Procedure, or the deletion of defendant intervenor Jesús Vite Lopez.  The motion will therefore be granted as to those requests.  The CATA plaintiffs' request to add a crossclaim against the Federal Defendants is addressed below.

  A. Rule 15(d) Standard

As a general rule, leave to file supplemental pleadings is freely given; such leave should not, however, be granted if amendment would be futile.  See Travelers Indem. Co. v. Dammann & Co., Inc., 594 F.3d 238, 243 (3d Cir. 2010); Hankin Family Partnership v. Upper Merion Twp., 2012 WL 43599 at *9 (E.D. Pa. Jan. 6, 2012) (Rule 15(a) standard generally applies in decision of Rule 15(d) motions).  In determining whether an amendment would be futile, "the court applies the same standard of legal sufficiency as it applies under Rule 12(b)(6)." In re. Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

With respect to the CATA plaintiffs' motion to amend, "there is no real distinction . . . between the question presented on a 12(b)(6) motion and a motion for summary judgment," See Marshall Cnty. Health Care Auth. v. Shalala, 988 F.2d 1221, 1226 (D.C. Cir. 1993), since on review under the APA, the entire case is a question of law, see Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001).  Because the motion to amend presents no

factual disputes, but rather only allegations about the legal conclusions to be drawn about the DOL's action, the motion presents a question on the merits of the proposed amendments. See Marshall Cnty. Health Care Auth., 988 F.2d at 1226 ("when an agency action is challenged . . . there is no inherent barrier to reaching the merits at the 12(b)(6) stage").

B. APA § 706(2)(A)

Pursuant to § 706(2)(A) of the APA, the court must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).  In an APA challenge, "a court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  The court is charged only with ensuring that the agency has "applied the procedures for rulemaking required by law and reached a rational conclusion." NVE, Inc. v. Dep't of Health and Human Servs., 436 F.3d 182, 190 (3d Cir. 2006).  In making this determination, courts consider whether the agency has "examine[d] the relevant data and articulat[ed] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." State Farm, 463 U.S. at 43.

C. The Decision to "Fall Back" on the Skill-Level Methodology

1. The continued use of the 2008 wage rule

The CATA plaintiffs argue that the DOL's decision, set forth in its December 30, 2011 final rule, to "fall back" on the skill-level methodology of the 2008 wage rule and the 2005 guidance letter was "contrary to law" because the skill-level methodology is legally invalid.[3]

---

[3] The CATA plaintiffs "are not challenging DOL's action in issuing the December 30 rule without notice and comment, nor are they challenging the DOL's decision to delay the effective date of the 2011 wage rule." (Doc. 87, at 3.)

11

(Doc. No. 87, at 3; Doc. No. 105-1, at 10.) The validity, or invalidity, of the skill-level methodology is not, however, at issue here. The court, in CATA I, declared the skill-level methodology invalid on procedural grounds. See 2010 WL 3431761, at *25. That holding is not presently being contested. Moreover, the Federal Defendants concede that "the December 2008 prevailing wage regime allow[s] for the importation of foreign workers with wages well below the average wage rates prevailing in the United States, which frustrates the statutory goal of protecting the domestic labor market," and that it therefore "should be replaced as soon as practicable." (Doc. 75 at 3, 14.)

The Federal Defendants' position is that, under the circumstances, the court should not set aside the DOL's decision to continue to use the invalid 2008 wage rule. (Doc. 75, at 14.) "When equity demands, an invalidly promulgated regulation can be left in place while the agency provides the proper procedural remedy." Fertilizer Institute v. EPA, 935 F.2d 1303, 1312 (D.C. Cir. 1991). In the CATA case, the court chose to remand without vacating the 2008 wage rule because it recognized the critical importance of a wage regulation to the administration of the H-2B program. CATA I, 2010 WL 3431761, at *25. And more recently, in denying the plaintiffs' motion for vacatur in light of the DOL's conclusion, on remand, that the continued use of the skill-level methodology was not justifiable, the court reasoned that "it would be important for DOL to have the 'moribund' 2008 wage regulation available as a potential fall-back structure to govern the H-2B program during further proceedings" in the event that DOL is barred by injunction or statute from using the 2011 wage rule. CATA III, 2011 WL 6150637, at *5.

The contingency envisioned by the CATA court has come to pass: the DOL now is barred, for all practical purposes, from using the 2011 wage rule for the duration of the

appropriations limitation. See P.L.112-74, Title I, Div. F, § 110 (Dec. 23, 2010) (prohibiting use of funds to implement the 2011 wage rule); Am. Bus Ass'n v. Rogoff, 649 F.3d 734, 741 (D.C. Cir. 2011) (observing that an appropriations limitation has the effect of barring enforcement of the targeted rule). In addition, challenges to the validity of the 2011 wage rule remain pending before this court and in the United States District Court for the Northern District of Florida. See Bayou Lawn & Landscape Serv. v. Solis, No. 11-00445 (N.D. Fl.). There is no other presently available wage rule for the DOL to use in making prevailing wage determinations should the court enjoin the DOL's continued use of the 2008 wage rule. Therefore, the DOL's decision to continue to employ the skill-level methodology to issue prevailing wage determinations for the duration of the appropriations limitation was not contrary to law.

2. Alternatives to the skill-level methodology

The CATA plaintiffs also argue that Federal Defendants' decision to continue to employ the skill-level methodology was arbitrary and capricious because Federal Defendants had three lawful alternatives at their disposal—ceasing to issue prevailing wage determinations, proceeding by adjudication, and issuing an interim rule. APA § 706(1) permits a reviewing court "to affirm, modify, or set aside" agency action "in whole or in part"; however, it does not empower a court "to exercise an essentially administrative function." Fed. Power Comm'n v. Idaho Power Co., 344 U.S. 17, 21 (1952). In other words, "§ 706(1) empowers a court only to compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing how it shall act." Norton v. So. Utah Wilderness Alliance, 542 U.S. 55, 64 (2004) (internal quotation marks and citation omitted). Recognizing this well-established limitation on the court's powers, the CATA plaintiffs do not seek a court order requiring the DOL employ a

13

specific procedure in adjudicating applications for labor certifications; they would request instead that the court enjoin further use of the 2008 wage rule and direct the DOL to establish a "lawful method" of making such determinations and to employ this method rather than the invalid skill-level methodology. (Doc. No. 87 at 10-11.)

The CATA plaintiffs first argue that the DOL should have opted to stop issuing labor certifications temporarily rather than continuing to issue them "in a manner that displaces U.S. workers or has an adverse effect on them," in violation of the H-2B program's statutory and regulatory mandates. (Doc. No. 64 at 11; Doc. 87 at 8-9.) The Federal Defendants point out that they are charged with administering the H-2B program, and that they cannot "simply fail to run a program that Congress established because DOL would likely face legal challenges alleging agency action unlawfully withheld." (Doc. No. 76 at 17.) Regardless of whether an action would lie against the DOL for temporarily ceasing to issue labor certifications—an issue on which this court is not prepared to rule—the agency's decision instead to use the invalidated 2008 wage regulation was reasonable.

Second, the CATA plaintiffs contend that the DOL could have proceeded by individual adjudication. (Doc. No. 64 at 11; Doc. No. 87 at 9.) The DOL asserts that adjudication is not an appropriate avenue for making a prevailing wage rule because of the broad applicability of such a rule. (Doc. No. 76 at 15-17.) "[T]he choice between rulemaking and adjudication lies in the first instance within the [agency's] discretion." NLRB v. Bell Aerospace Co., 416 U.S. 267, 294 (1974). Generally speaking, agencies proceed by rulemaking rather than adjudication when they formulate new policies, change existing rules, and establish new rules of widespread application. See Bell Tel. Co. of Pennsylvania v. FCC, 503 F.2d 1250, 1265 (3d Cir. 1974), cert denied, 422

14

U.S. 1026 (1975) ("[W]e recognize that several courts have come to favor rule-making over adjudication for the formulation of new policy . . . [although] there must be limits to this trend.")[4] While the DOL may have the discretion to set prevailing wage rates by individual adjudication, "over the last forty years, the DOL has never adopted prevailing wage rates through adjudication." (Doc. 75 at 18.)  The potential burden on the agency in adopting an adjudicatory procedure for setting prevailing wages is obvious, as is the risk of lack of uniformity. Cf. Heckler v. Campbell, 461 U.S. 458, 468 (1952).  The court cannot say that it was unreasonable for the DOL to choose to fall back on the 2008 wage rule rather than proceeding by adjudication.

Finally, the CATA plaintiffs contend that DOL should have issued an interim regulation. (Doc. No. 64 at 11.)  In response, the DOL points out that it has already gone through the process of devising a new rule to address "substantive and procedural concerns about prevailing wages in the H-2B program," and of promulgating that rule through notice and comment. See 76 Fed. Reg. 3452, 3453.  In the DOL's view, to issue a similar rule on an interim basis would be to engage in "gamesmanship with Congress," given Congress's decision to postpone the implementation of that rule through the December 23, 2011 appropriations limitation. (Doc. 76 at 14.)  The CATA plaintiffs contend that, "[t]hese arguments ignore the fact that DOL not only can draft an interim rule that addresses Congress'[s] concerns about the 2011 wage rule, but that, even in the absence

---

[4] Indeed, some courts have held that agencies must so proceed. See Patel v. INS, 638 F.2d 1199, 1204 (9th Cir. 1980) (invalidating adjudicatory decision of immigration appeals board imposing job creation requirement on aliens seeking exemption from labor certification requirement on ground that this was an "improper circumvention of rulemaking procedure"); but see Stoler & Co. v. Commodity Futures Trading Comm'n, 855 F.2d 1288, 1294 (7th Cir. 1988) (rejecting Ninth Circuit rule as unduly restraining agency discretion).

of a court order, it is going to have to draft such a rule if it is ever going to replace the illegal 2008 rule and fulfill its duty to protect U.S. workers . . ." (Doc. 87 at 8.)  This may be the case; however, at this point in time, the DOL's decision to defend the January 2011 rule rather than returning to the drawing board does not appear to be unreasonable.

### 3. Failure to consider alternatives to the skill-level methodology

The CATA plaintiffs also contend that the DOL's failure to describe the above alternative courses and its reasons for rejecting them in the December, 30, 2011 Federal Register announcement of the final rule violated the APA.  In promulgating a rule, an agency is not required "to consider all policy alternatives in reaching [its] decision." State Farm, 463 U.S. at 51.  "[R]ulemaking cannot be found wanting simply because the agency failed to include every alternative device and thought conceivable by the mind of man . . ." Id. (internal quotation marks and citation omitted).  An agency need only state its decision and the "determinative reasons" for that decision, such as not to "frustrate effective judicial review." Camp v. Pitts, 411 U.S. 138, 142-43 (1973) (*per curiam*).  A court may take into account the context of rulemaking in determining whether the agency's explanation of its decision-making process is sufficient to permit judicial review: a rationale justifying a regulation need not be stated in the rule's preamble if it is reasonably discernable from the regulatory history and attendant litigation. See Gardner v. Grandolsky, 585 F.3d 786, 792 (3d Cir. 2009).

As justification for its decision to continue to employ the skill-level methodology of the 2008 wage rule, the DOL pointed to the fact that it was barred by the appropriations limitation from implementing the 2011 wage rule, and to the possibility that without a wage rule it would

be unable to operate the H-2B program. See 76 Fed. Reg. 82116. Additionally, the regulatory history leading up to the December 2011 postponement suggested that the DOL decided to continue to use the skill-level methodology because Congress had indicated its approval of this course of action; during the previous appropriations limitation, Congress directed the DOL to continue to employ the skill-level methodology. See 76 Fed. Reg. 73508 (Nov. 29, 2011); H.R. Rep. No. 112-284 (2011) (Conf. Rep.) Moreover, the course of the litigation relating to the 2008 wage rule suggested that the court would not stand in the way of the DOL's decision to employ the skill-level methodology until the 2011 wage rule went into effect. See CATA I, 2010 WL 3431761, at *25 (refusing to vacate the skill-level methodology); CATA II, 2010 WL 4823236, at *1 (same); CATA III, 2011 WL 6150637, at *5 (same). In fact, the CATA court's December 9, 2011 injunction contained an exception permitting the DOL to continue to employ the skill-level methodology should Congress or a court bar implementation of the 2011 wage rule. CATA III, 2011 WL 6150637, at *5. While the DOL's explanation of its reasons for falling back on the skill-level methodology was brief, it was sufficient to permit effective judicial review, particularly when viewed in the context of the attendant litigation, regulation, and legislation. See Camp, 411 U.S. at 143.

In summary, the DOL has articulated a satisfactory explanation for its decision to continue to utilize the skill-level methodology, including a "rational connection between the facts found and the choice made." State Farm, 463 U.S. at 43 (1983). It is not the province of the court to determine whether better courses of action may have been available to the agency; the court's review is limited to the determination whether the course of action that the agency chose

was reasonable. See NVE, 463 F.3d at 190.  While it may have been possible for the DOL to cease issuing labor certifications, proceed by adjudication, or issue an interim wage regulation, none of these alternatives is so obviously superior as to permit the court to say that the DOL's choice instead to fall back on the invalid 2008 wage regulation was arbitrary and capricious.

The court is deeply concerned at the prospect of the Federal Defendants continuing to employ indefinitely a wage rule that the court has held to be invalid and the DOL has found to have a depressive effect on the wages of U.S. and H-2B workers, in contravention of the H-2B program's mandate. See 8 U.S.C. § 1101(a)(15)(H)(ii)(B); 8 C.F.R. § 214.2(h)(6)(iv)(A). Nevertheless, it was reasonable for the Federal Defendants to chose to continue to employ the skill-level methodology to make prevailing wage determinations for the duration of the present appropriations limitation, i.e., until October 1, 2012.  The CATA plaintiffs' request to amend their complaint therefore is futile. Cf. Nietzke v. Williams, 490 U.S. 319, 327 (1989) (noting that a party may lose on a 12(b)(6) motion whether his claim "is based on an outlandish legal theory or a close but ultimately unavailing one.")[5]

III. Conclusion

For the reasons given above, the CATA plaintiffs' motion to amend their answer  (Doc. No. 105, previously filed at Doc. No. 48) will be granted insofar as they ask to add Mark Cunanan as a defendant intervenor and delete Jesús Vite Lopez and denied insofar as they seek to

---

[5] The injunction issued by Judge Pollak in CATA III, which bars Federal Defendants from utilizing the 2008 wage rule except to address an injunction or statute barring them from using the 2011 wage rule remains, of course, in place. See CATA III, 2011 WL 6150637, at *5.

assert a crossclaim against the Federal Defendants.[6]

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.

---

[6] After filing the present motion, the CATA plaintiffs filed a Motion for Preliminary and Permanent Injunctive Relief, Summary Judgment, and Declaratory Relief Against the DOL (Doc. No. 64), which also will be denied in the order accompanying this memorandum. In that motion, they request: partial summary judgment declaring that the December 30, 2011 rule violates the DOL's statutory and regulatory mandates; preliminary and permanent injunctions requiring DOL to issue an interim wage rule or alternative adjudicative procedure for prevailing wage determination to be effective within 45 days of the court's order; a declaration that good cause exists to issue an interim rule that is immediately effective; and an injunction requiring DOL to formally notify H-2B employers that the wages set pursuant to the December 30, 2011 rule are unlawful and that DOL will put an interim rule or procedure into effect within 45 days. (Doc. No. 64.) These requests are all based on the allegation in the CATA plaintiffs' proposed crossclaim that the DOL violated § 706(2)(A) in promulgating the December 30, 2011 rule and continuing to rely on the skill-level methodology. The court's denial of the CATA plaintiffs' motion to amend is a dispositive determination of the merits of their proposed crossclaim. See Marshall Cnty. Health Care Auth., 988 F.2d at 1226. Their requests for declaratory and injunctive relief therefore must be denied. Cf. Bjorgung v. Whitetail Resort, LP, 550 F.3d 263, 269 (3d Cir. 2008) (holding that district court properly denied as moot summary judgment motion related to claims that had been decided in an earlier ruling).

   The CATA plaintiffs have also requested an order providing for expedited adjudication of the motion discussed herein and requiring Federal Defendants to file a prompt answer to the crossclaim that the CATA plaintiffs seek to assert. Upon the denial of the motion to amend, these requests also will become moot.